## CITY OF ATLANTA *v.* SMITH *et al.*

1. Under a statute authorizing street paving to be done in a city when "the person owning real estate which has at least one third of the fronting on the street, or portion of a street, the improvement of which is desired, shall in writing request the commissioners of streets and sewers to make such improvements," the city cannot, as an owner of property fronting on such street, join in signing such request in order to make the same come up to the legal requirement as stated.

2. A statute authorizing the paving, on certain conditions, of a portion of a street "not to exceed four squares, . . upon the petition of abutting owners having less than one third frontage on the street . . the improvement of which is petitioned for," is not applicable where the contemplated improvement embraces five squares on one side of the street and four on the other.

3. Though an ordinance providing for certain paving be properly and lawfully passed, the paving therein provided for cannot be treated as having been actually laid, and therefore as an improvement already made, for the purpose of legalizing another ordinance passed on the same day, to the validity of which the actual existence of the improvement in question is essential as a jurisdictional fact.

4. There was no error in granting the injunction prayed for.

July 27, 1896.

Petition for injunction. Before Judge Lumpkin. Fulton county. February 18, 1896.

*J. A. Anderson* and *George Westmoreland*, for plaintiff in error. *Harry A. Alexander*, contra.

ATKINSON, Justice.

Section 213 of the charter of the City of Atlanta provides, "That said Mayor and General Council shall also have full power and authority to assess one third of the cost of grading, paving, macadamizing, constructing side-

drains, cross-drains, crossings, and otherwise improving the roadway or street proper on the real estate abutting on each side of the street improved; *provided*, that before any street or portion of a street shall be so improved, the person owning real estate which has at least one third of the fronting on the street, or portion of a street, the improvement of which is desired, shall in writing request the commissioners of streets and sewers to make such improvements," etc. Section 236 of the city charter authorizes "the Mayor and General Council of said city, in their discretion, to grade, pave, macadamize, and otherwise improve for travel and drainage the streets and alleys, not exceeding four squares thereof, which connect to other streets already improved, upon the petition of abutting owners having less than one third frontage," etc. Section 237 of the city charter, as at present amended, authorizes "the Mayor and General Council of said city, in their discretion, in addition to the powers conferred by the above recited acts, to grade, pave, macadamize, and otherwise improve for travel and drainage, streets and alleys in said city, not to exceed four squares of any street or alley, a portion of which street or alley is already paved or macadamized or otherwise improved, when such improvement by paving, macadamizing or otherwise, will connect a portion or portions of such street or alley already improved, or will connect an improved portion of such street or alley with another improved street or alley, upon the petition of abutting owners having less than one third frontage on the street or alley, or portion of the street or alley, the improvement of which is petitioned for," etc.

At the time the improvements were projected out of which the assessments complained of in the present case subsequently arose, Butler street was unpaved, except for a short distance south of Decatur street connecting that street with Capitol avenue. That portion of Butler street extending northward from Decatur street, and between

Decatur street and Edgewood avenue was unimproved. Between Decatur street and Edgewood avenue' there are three streets, Gilmer, Jenkins and College, which intersect Butler street. Between College street and Edgewood avenue, there is yet another, Boaz street, connecting Bell street with Butler street, thus dividing the territory between Decatur street and Edgewood avenue into five blocks fronting Butler street on the east, and four fronting that street on the west. Neither of these intersecting streets has been improved by paving, macadamizing or otherwise.

Two separate applications were granted by the mayor and council, one of them authorizing the laying of belgian block pavement between Decatur and Jenkins streets, and the other authorizing the laying of a pavement to be constructed of vitrified brick between Jenkins street and Edgewood avenue. Between Jenkins street and Edgewood avenue there are three squares fronting on Butler street on the eastern side of that street; on the western side there are two squares. The total frontage upon Butler street between Jenkins street and Edgewood avenue is 1,368 feet. The petition upon which the projected improvement was authorized to be made was signed by the Southern Medical College, and by the City of Atlanta, by and through its mayor, who, in pursuance of a resolution of the council authorizing him to do so, signed on behalf of the city, the city itself owning the property occupied by the Grady Hospital, which is one of its public institutions. The total number of front feet represented by the persons signing said petition was 635, of which the Grady Hospital property represented 300 feet. An ordinance was passed by the mayor and council, authorizing the execution of the projected plan of improvement, and authorizing an assessment against the abutting property owners respectively, each according to his frontage upon the street, of one third the cost of the improvement. The city

proceeded to lay down the pavement under this ordinance, and was proceeding to enforce the assessment levied under authority of the same against certain of the abutting lot owners, when they filed a petition, the purpose of which was to enjoin the collection of such assessments, upon the ground that the ordinance under which the improvement was made, and under which the assessment was levied, was void, for the reason that neither section 213, 236 nor 237 of the charter of the City of Atlanta, from which said sections the city council derived their authority to make the improvement and assessment complained of, had been complied with in such manner as to authorize the passage of the ordinance under which the improvement was made. The trial judge granted the injunction, as prayed, and the mayor and council excepted.

1.  In determining whether or not there is error in the judgment, we will first consider section 213 of the charter as it bears upon this subject.  Independently of the consent of the citizen who may own property abutting upon a public street, whenever, in the discretion of the mayor and council, as a matter of public convenience, it becomes necessary to improve a public street, this may be done, provided the expense be defrayed out of the general public fund appropriated by law to that purpose; but when it is sought to charge the owner with a portion of the expense of such public improvement, the authority of the mayor and council is limited to such cases as those in which persons owning one third of the frontage on such street shall by petition request the improvement to be made.  This is the proviso attached to the power conferred by section 213 of the charter.  The contention of the complainants in the present case was, that the presentation of such a petition was indispensable to the exercise of this jurisdiction by the mayor and council; and we think the language of the act does not admit of a doubt as to the correctness of this contention.  It is the one condition pre-

30

cedent to the employment of the power sought to be exercised by the mayor and council in the present instance, and without the performance of that condition the power is not conferred by the charter, and not being conferred by the charter, of course cannot be exercised by the mayor and council. It is a dormant power, and can be wakened into life only through the means appointed of the law. Unsupported by such a petition, the action by the mayor and council in seeking to impose, under the provisions of section 213 of the charter, this burden upon the abutting lot owners, was *ultra vires.* It was urged that the petition was void, for the reason that the frontage of the property upon which the Grady Hospital was situate, and of which the city was owner, was necessary to supply the required one third of the frontage, and that the city could not lawfully join as a party in preferring such a petition. As will be seen from the record, the total number of front feet was 1,368. The total amount of frontage signed for was 635 feet. Of this 635 feet, 300 feet was the frontage of the Grady Hospital property. Deducting the 300 from the 635 feet, and it will be seen that the remainder was less than the one third required; so at last the validity or invalidity of this ordinance, in so far as it is sought to support it by the grant of power conferred in section 213 of the charter, depends upon whether the city, in its corporate capacity, could lawfully, as against a citizen, petition itself to enter upon this projected plan of improvement. To ask this question, it seems to us, is to answer it. It is true that the General Assembly uses the words, "person owning real estate," in describing those who are competent to prefer the petition; and while the word "person" ordinarily comprehends corporations, it cannot be held to include the municipal corporation which is itself the sovereign power moving in this matter, without an express legislative declaration to that effect, or without the use of words which, by necessary implication, would bring it within the

term "person," as employed in the act. It is an ancient maxim of the common law that "the king is not bound by any statute if he be not expressly named to be so bound." No intent to relinquish or abridge any prerogative, right, title or interest of the crown will be presumed, unless such an intent is manifest from the language of the statute. Broom, Leg. Maxims, *72. In the case of *Mayor of Brunswick* v. *King*, reported in 91 *Ga.* 522, the maxim above quoted was applied in favor of the municipal authorities of the city of Brunswick as against the board of health; and it was held in that case, that an ordinance which forbade any person from excavating etc. in the streets during a given period had no application to the Mayor and Council of the City of Brunswick, who were proceeding by its lawful agents with a work of street improvement during a season when that class of work was ordinarily prohibited. The effect of this statute is to impose a tax upon the property of all persons falling within the scope of its terms, and it would seem a strange anomaly if such significance should be attached to the word "person" as to authorize the municipal corporation to levy a tax upon its own property which it holds to public uses. Such an interpretation would be contrary to the whole scheme of tax legislation in this State. Under the general tax laws of Georgia, all persons are required to pay taxes on their property, real and personal, but we know of no case in which persons charged with the collection of such taxes have ever demanded that a municipal corporation should pay State and county taxes upon property held by it for corporate purposes, and we know of no law in Georgia which would sustain such a demand even if it were made. We cannot presume, then, that the General Assembly intended to use the word "person" in the sense in which it is sought to be applied in the present case. Aside from these considerations, the whole scheme outlined in the legislation upon this subject, for the purpose of collecting the assessments when levied, forbids the

idea that the General Assembly intended to include the municipal corporation of Atlanta in the term "person," for it is provided by section 216 of the city charter, that the mayor and council shall have authority to enforce the collection of the amount of any assessment so made by execution to be issued by the clerk of council against the real estate so assessed, and against the owner thereof at the date of the ordinance making the assessment, that this execution may be levied by the city marshal, and the property sold, etc. It gives the defendant the right to file an affidavit of illegality, and contest the justice of the assessment. This is the only scheme for the collection of these assessments, and to hold that the word "person" includes the municipal corporation would necessarily include a. decision that the mayor and council could lawfully issue execution against itself for assessments made upon its own property, and levy and sell its own property in satisfaction of the debt. The absurdity of such a construction is manifest; and we are therefore led to conclude that it was no part of the legislative purpose that the City of Atlanta should itself become a petitioner to its own officials in order to put in motion the machinery for the inauguration of this kind of an improvement, and for the levy of assessments to defray the expense thereof, which assessments might ultimately become a charge in favor of the city against its own property, which by law is exempted from levy and sale. The ordinance, in so far as it rests on section 213 of the city charter, was, according to our judgment, void, and the levy of the tax complained against cannot be upheld under it.

2. It is insisted, however, that the ordinance is good under sections 236 and 237 of the charter. It will be readily seen, from an examination of those sections as they are hereinbefore stated, that neither of them authorizes the construction of the projected improvement. From Decatur street to Edgewood avenue was a greater distance

than four squares. It included the squares embraced between Decatur and Gilmer, between Gilmer and Jenkins, between Jenkins and College, between College and Boaz, and between Boaz and Edgewood avenue on the eastern side of the street, while the distance upon the western side was exactly four squares. Therefore, that portion of Butler street proposed to be covered by this scheme of street improvement exceeded four squares, the limit fixed in the charter. Section 237, for the same reason, cannot be invoked to uphold the present ordinance. So that, if we treat the two ordinances as covering one scheme of street improvement, they cannot be upheld under either of the provisions of the charter.

3. It is urged, however, that they should be treated as separate ordinances, and that, treating the ordinance first passed as legalizing the construction of the pavement from Decatur to Jenkins street, the second ordinance, covering the distance between Jenkins street and Edgewood avenue, would fall within the provisions of section 237 of the charter. It will be seen, by reference to section 237 of the charter, that where a projected improvement does not cover more than four squares, and it will connect a portion or portions of the street proposed to be improved with a street or alley already improved, or will connect an improved portion of such street or alley with another improved portion of such street or alley, the city has the authority to make the improvement; and it is urged, inasmuch as the improvement under the first ordinance was completed before the improvement under the second ordinance was commenced, that therefore the second ordinance was a valid authority for the projected improvement. We do not think this contention is sound. The power of the mayor and council is dependent, not upon circumstances which may arise after they have entered upon a work of public improvement, but upon the conditions as they exist at the time steps are taken to evoke from the charter authority the power

sought to be exercised. On the day of the passage of these two ordinances there was no possible means by which, within a compass of four squares, the projected improvement could be completed, and this being true, the city authorities acquired no right to enter upon the work, or to charge against the abutting lot owners any portion of the costs of its construction.

4. There are other questions made in the record, but we do not find it necessary to consider them in passing upon the legality of this assessment. The circuit judge committed no error in granting an injunction, and the judgment of the court is accordingly                    *Affirmed.*