THE CITY OF KANSAS CITY *et al.* v. R. M. GRAY *et al.*

No. 11,692. (61 Pac. 746.)

1. TAXATION—*Special Assessment—Injunction—Limitation of Action.* Where a mayor of a city of the first class in the name of the city signs a petition for paving, undertaking to represent certain property necessary to confer jurisdiction, which, in reality, belongs to the county, that fact not being shown by the petition, an action to enjoin the collection of the assessment must be brought within the thirty days provided by statute. The case of *Kansas City v. Kimball*, 60 Kan. 224, 56 Pac. 78, followed.

2. ——— *Engineer's Estimate—Limitation of Action.* An estimate of the city engineer of the cost of the paving, being one of the steps in the assessment proceedings following the granting of the petition, is not open to attack for want of detail, after the period of limitation prescribed by statute has elapsed.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed July 7, 1900. Reversed.

STATEMENT.

THIS was an action commenced in the court of common pleas of Wyandotte county by R. M. Gray and fourteen others, owners of property abutting on Ann avenue, in Kansas City, Kan., against the city, the city clerk, county clerk, and county treasurer, to enjoin the collection of certain special assessments levied against their real estate for the purpose of paving Ann avenue from Sixth to Tenth streets. A petition, regular in form and with proper certificates, was presented to the mayor and council under the provisions of section 171 of chapter 32 of the General Statutes of 1897. Property having a frontage on the avenue was signed for thus : "The city of Kansas City, Kan., R. L. Marshman, mayor. 400 feet." Said property was, in fact, public ground, known as Huron Place, the fee title of which was in the county. Without this 400 feet, the petition would have been insufficient to confer jurisdiction on the mayor and council to order the improvement.

It was alleged in the petition on which this case was tried that the petition to the mayor and council was not signed by the owners of a majority of the front feet owned by residents of said city fronting or abutting on Ann avenue from Sixth to Tenth streets ; that the same was invalid and insufficient to confer jurisdiction on the mayor and councilmen to make said improvement, and that the estimate was not in detail, as required by law. The city pleaded, among other things, the thirty days' statute of limitations.

Under the agreed statement of facts, the only questions submitted to the trial court related to the sufficiency of the petition of property owners asking for said paving, and the validity of the estimate made by the city engineer ; and the controversy was restricted

to these two propositions. The court below sustained the contention of defendants in error, and a decree was entered perpetually enjoining the collection of said special-assessment taxes levied for paving and charged against the real estate of the plaintiffs below. The city has brought the case here for review.

*T. A. Pollock,* and *F. D. Hutchings,* for plaintiffs in error.

*E. S. Earhart,* and *J. O. Rankin,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. : There is nothing in the record before us which distinguishes this case from that of *Kansas City v. Kimball,* 60 Kan. 224, 56 Pac. 78. So far as the petition to the mayor and council is concerned, it shows a conformity to the provisions of section 171 of chapter 32, General Statutes of 1897. There is a certificate by the city engineer, to which officer we presume the petition was submitted, stating that the same is signed by the owners of a majority of the front feet owned by residents abutting on Ann avenue between Sixth and Tenth streets, and a further certificate by the city attorney showing that the petition is signed by the parties having a legal right to sign for the property set opposite their names as shown by abstracts furnished by the city abstracters. These certificates, with the petition, were before the council when the prayer of the property owners was granted. The certificate of the engineer shows the total number of front feet owned by resident property owners to be 3520 ; total number signing, 1982.50 ; majority, 445. There is error in this calculation, in that the majority should be 222.50.

The principal attack made on the validity of the petition for paving is based on the fact that Huron Place, having a frontage of 400 feet on the avenue to be paved, was dedicated to public purposes on September 28, 1859, and that the mayor, representing the city, was without authority to join with the other petitioners. The 400 feet signed for by the mayor does not appear upon the face of the petition to be the property known as Huron Place. This fact was shown by evidence *aliunde* the petition to the council. We are concerned here only with the question whether the petition to the council praying for the improvement contained evidence on its face showing that it did not conform to the statute requiring that the same be signed by the resident owners of a majority of the feet fronting and abutting on said street to be improved.

In *Kansas City v. Kimball,* supra, Mr. Chief Justice Doster, speaking for the court, said:

"The defendants in error not having commenced their action within the statutory period, the remaining questions are easy of disposal. The law did not require the petition to the mayor and council for the making of the improvements in question to show upon its face that it was signed by the resident owners of a majority of the front feet to be paved. (*City of Argentine v. Simmons,* 54 Kan. 700, 39 Pac. 181.) The fact, if it were such, that the resident owners of a majority of the front feet did not in reality sign the petition did not appear upon it or upon other proceedings. Upon the face of the petition and other proceedings nonconformity to the law did not appear. In such cases the validity of the assessment cannot be challenged beyond the limited period allowed by the statute for so doing. (*Doran v. Barnes,* 54 Kan. 238, 38 Pac. 300.)"

It is true that if the 400 feet frontage of Huron Place be deducted the petition lacks 177.50 feet of

containing a majority of the front feet owned by residents of the city, but inquiry into this question cannot be made after the statute of limitations has barred the right to attack the validity of the assessment. It would be a matter of doubt if the petition for the improvement showed on its face that the property represented by the mayor was in fact Huron Place, the legal title to which is in the county, whether jurisdiction had been conferred on the mayor and council to order the paving done and contract therefor at the expense of the property owners. Conforming, however, to the rule laid down in the case quoted from, we are not at liberty to hold that the 400 feet appearing thereon in the name of the city is the tract of land known as Huron Place, and that the mayor was without power to sign therefor. We must look to the face of the petition.

A city can take and hold a fee-simple title to real estate when the same is necessary for municipal purposes, and the petition to the council asking for this improvement does not disclose that the property signed for by the mayor was not so held. In *Doran v. Barnes*, 54 Kan. 238, 241, 38 Pac. 300, 301, which was a case involving the levy of a paving tax in the city of Wichita and the validity of a petition therefor, the court said:

"The mayor and council examined the petition. Upon the hearing thereof, they found that it was signed by the owners of a majority of the abutting front feet, even after omitting 100 feet therefrom. With this omission, there was 3398 feet represented. They ordered the petition spread upon the journal. At the time the amount due on each lot or piece of ground liable for the assessment was ascertained, all the proceedings relating to the paving and assessment were apparently regular and valid. We are therefore of the opinion that paragraph 590 of General Statutes

of 1889 is applicable, and that this action ought to have been commenced in the court below within thirty days from the time the amount of the assessment was ascertained.''

That some of the petitioners were non-residents is not available to the plaintiffs below after the statute of limitations has run, such fact not appearing on the face of the petition to the council.

The estimate of the engineer, in our judgment, was sufficiently detailed to meet the requirements of the statute. It contained the number of square yards, the cost per square yard, and the total cost. The objection urged against the estimate is that there is no specification whether one or more layers of brick are to be used, and that there is no apportionment as to how much is chargeable to the abutting property or to the city at large. In the case of *Olsson v. City of Topeka*, 42 Kan. 709, 21 Pac. 219, the city proposed to pave a street with stone and asphalt, and the estimate made by the engineer of the cost of the improvements was as follows : ''Paving 2633 square yards, at $2.85 per square yard, $7504.05.'' This was held to be in sufficient detail, and it corresponds substantially with the estimate in the case at bar. The statute does not require the estimate to state the amount chargeable to the city at large.

Furthermore, we think that section 212 of chapter 32, General Statutes of 1897 (Gen. Stat. 1899, § 749), providing that no suit to set aside special assessments or enjoin the making of the same shall be brought after the expiration of thirty days from the time the amount due on each lot liable for such assessment is ascertained, does not permit an inquiry into the question whether the estimate in this case is sufficiently detailed, after that period. The suit to enjoin the col-

lection of the assessments was commenced more than thirty days from the time the amount due for the paving on each lot was ascertained. The estimate of the engineer was one of the steps in the assessment proceedings which followed the granting of the petition of property owners presented to the mayor and council, and, if insufficient, it was shielded from attack by said statute after the thirty days had expired. The question first to be determined in this case is whether the mayor and council obtained jurisdiction by a petition regular on its face, showing from its recitals that the requisite number of resident property owners joined in the request for the improvement. This appearing, a defective estimate made by the city engineer, which, under the provisions of the statute, seems to be required for the information of the municipal authorities, cannot be shown, to defeat the power to make the improvement, after the time permitted by law to begin an action therefor has expired. It seems probable that, had an action been commenced in time, the property owners complaining of this assessment could have defeated the same, for then the range of their attack would have been much wider and not confined to such narrow limits. Having waited too long, they are not now in a position to obtain relief.

The judgment of the court below will be reversed and a new trial granted.

JOHNSTON, J., concurring.

DOSTER, C. J. (dissenting) : I dissent from the first paragraph of the foregoing syllabus and the corresponding portion of the opinion. I adhere to the decision made in *Kansas City v. Kimball*, 60 Kan. 224, 56 Pac. 78, but I deny the applicability of that case to the facts of this one. The face of the petition on

which the mayor and council took action in this case did not fail to show non-conformity to the law, but on the other hand it affirmatively showed non-conformity to it. The law requires the petition to be signed by "resident owners." Only by conceiving Kansas City as a resident owner of 400 feet of the property fronting on the street to be paved can the petition be upheld as not affirmatively showing non-conformity to the law. Of course a city can be an owner of property within its own limits ; and for the purposes of the case in hand we will say that the mayor and council were at liberty to regard it as the owner of the 400 feet in question—although the fact of ownership was in reality otherwise, as subsequently proved. They could not, however, regard it as a "resident owner," because that term, as used in the statute under consideration, means natural persons residing in the city, and, perhaps, private corporations domiciled there. I say this because the incongruity of classifying a sovereignty for purposes of taxation as among the residents of its own territorial limits is too great to admit of the idea entertained by the majority of the court. If a city be a resident owner within its own limits, and hence qualified to sign a petition for the making of street improvements, it follows that all the regulations as to the making and collection of the assessments to pay for the improvements apply to it as to private individuals, unless the statute elsewhere provides a different rule. The statute, however, makes no different provision as to it in relation to such matter. Again, if a city, for the purposes of a petition for street improvements, is a resident owner within its own limits, we have the anomalous spectacle of a municipality petitioning itself to make a municipal improvement whereby taxes on its own property may be imposed,

and for the non-payment of which taxes such property may be sold and conveyed away from it. Again, the very statute which authorizes the making of the improvement on the petition of resident owners authorizes such owners to remonstrate to the mayor and council against the making of the improvement, and also authorizes the mayor and council to consider and determine whether the improvement petitioned for is necessary to be made.

Now, suppose the petition in this case had been signed by natural persons only, and that the city had joined with the others in a remonstrance against the making of the improvement, as upon the theory of its being a resident owner it had the right to do. We would have been treated to the equally anomalous spectacle of a city formally remonstrating to itself against the proposed action by itself, and gravely considering its own remonstrance along with that of others in order to determine the action which it should take.

The fact is the statute contemplates the making of street improvements upon the petition, or the refusal to make them upon the remonstrance, of those who are the subjects of municipal authority — those whose property may be taken *in invitum* to pay for the improvement, if made, or may go unburdened if not made; and it does not contemplate that the sovereignty which itself determines the necessity for the making of the improvement and which levies and collects the taxes to pay for it, if made; may join with private individuals in setting in motion that machinery of the law which eventuates in the action taken.

The precise question here involved was determined in accordance with the views above expressed in *City of Atlanta v. Smith et al.*, 99 Ga. 462, 27 S. E. 696, and I think that the decision in that case is a sound precedent to follow.