### FLOYD *v.* ATLANTA BANKING COMPANY *et al.*

Where one voluntarily enters into a written contract agreeing to pay a municipal corporation a given sum of money as his proportionate share of the cost of paving a street upon which his property abuts, and afterwards seeks to annul and set aside such contract on the ground that the assessment made upon him for such work was neither legal nor authorized, but fails to either allege or prove that the contract executed by him was the result of fraud, accident, or mistake, he is not entitled to equitable relief. If the contract was entered into by him with a knowledge that the corpo-

ration could not legally demand payment of the assessment, it was competent for him, nevertheless, to make an agreement to pay the same, and the fact that his property was benefited by the work done is a sufficient consideration to support the contract.

Argued December 12, 1899.—Decided January 31, 1900.

Equitable petition.   Before Judge Candler.   Fulton superior court.   March term, 1899.

*H. A. Alexander*, for plaintiff.   *Payne & Tye, J. A. Anderson,* and *J. T. Pendleton*, for defendants.

LITTLE, J.   Floyd filed a petition in the superior court of Fulton county, making the City of Atlanta, A. W. Hill, marshal of the City of Atlanta, Venable Brothers, and the Atlanta Banking Company parties defendant, in which it was sought to permanently enjoin the defendants from enforcing against the petitioner certain alleged contracts to pay a portion of the cost of paving the roadway on North Butler street in the City of Atlanta on which real estate belonging to petitioner had a frontage, said contracts being then held by the Atlanta Banking Company.   The evidence and admissions of the parties made this case:   On February 25, 1895, an ordinance was passed by the authorities of the City of Atlanta providing for the paving of North Butler street between its intersection with Edgewood avenue and Jenkins street, and assessing two thirds of the cost on owners of abutting real estate.   On July 1, 1895, in pursuance of said ordinance, the City of Atlanta entered into a written agreement with the Standard Paving Company for the construction of such paving.   The contract was as follows:

"Georgia, Fulton County.   This agreement, made and entered into this 1st day of July, 1895, between the City of Atlanta, a municipal corporation under the laws of the State of Georgia, party of the first part, and the Standard Paving Company, a corporation under the laws of Georgia, party of the second part, both of said county, witnesseth, that the said party of the first part, on petition of the citizens owning more than one third of the real property abutting on Butler street between Jenkins and Edgewood avenue, for the paving of said Butler

street with vitrified brick, said petition dated January 31st, 1895, and on recommendation of the city engineer, and commissioner of public works, dated February 4th, 1895, passed on the petition aforesaid, favoring the paving of said Butler street between the points named, with vitrified brick, at an estimated cost of $7,884.00, and of which the cost estimated to be paid by the City of Atlanta is $2,628.00, besides the sum of $1,200.00 on account of the Grady Hospital lot. The sum to be paid by the owners of abutting property, $5,256.00. In pursuance of said petition, the general council passed an ordinance, February 18th, 1895, being passed by the requisite majority of councilmen and board of aldermen, prior to approval by the mayor, on the 25th day of February, 1895, and which ordinance provides for the paving with vitrified brick of that portion of Butler street between Jenkins street and Edgewood avenue. And whereas the City of Atlanta, by report of the street committee of the general council, which was adopted by said council and approved by the mayor on the day of February 18th, 1895, let the contract for paving Butler street between the points aforesaid, with vitrified brick, to the said party of the second part, at the price of $2.21 per square yard, being the lowest and best bid, conditioned that the work of paving aforesaid shall be executed in all respects to the satisfaction of the city engineer and commissioner of public works, and in accordance with specifications for said paving, prepared by the city engineer of the City of Atlanta, and inspected by the said party of the second part, before making this bid, upon which said bids were based, a copy of which specifications is attached to, and made a part of this contract, and on the further condition that the said party of the second part should give bond in the sum of $2,000.00, with sureties resident in Fulton county, Georgia, to be approved by the mayor of the City of Atlanta, for the faithful performance of said contract, and the maintenance of said pavement for a period of five years from the completion of the work, on the terms stipulated in the specifications aforesaid, and in such smooth condition or repair as the specifications provide for, and on the further condition that said party of the second part agrees to look to the owners of abut-

ting private property for the payment of the assessments for said vitrified brick paving, made by and in pursuance of the ordinance aforesaid, against the lot of each of said abutting owners, and also agrees to allow each of the owners of said abutting private property the option of paying such assessment in full in cash, or one fourth in cash within thirty days after said work is completed and demand made for payment thereof, and the remaining three fourths in three equal installments, falling due in one, two, and three years, with interest at the rate of seven per cent. per annum on said deferred payments. The bills or executions for the assessment against each of the owners of abutting private property are to be transferred to the said party of the second part or its assigns, and the said party of the second part is to look solely to the collection of these bills or executions for payment for paving said Butler street between the points named, except as to that part of said cost and expense in said ordinance assessed against the City of Atlanta; and the City of Atlanta covenants that it has charter power to do this paving, and that the ordinance passed in pursuance of the charter, providing for the paving in question, is a valid ordinance, and gives to the party of the second part a lien, from the date of its passage, against the property of each of the abutting owners of land on Butler street between the points named, for the amount of the assessment against each parcel of property, made by and in pursuance of said ordinance. The work of paving said street shall be begun on the 1st day of July, 1895, and not before, and shall be carried on and completed in accordance with the specifications, to the satisfaction of the city engineer and commissioner of public works, within     days after said date of beginning.

"In consideration of the due and thorough performance of said contract by said party of the second part, the City of Atlanta covenants to pay said party of the second part, upon the completion of said work and its acceptance by the city engineer and commissioner of public works, the sum of two thousand, six hundred and twenty-eight ($2,628.00) dollars, or such larger or smaller sum as may be chargeable to or against the city, upon the final estimation of said paving, at the contract

price aforesaid, and to transfer to the said party of the second part valid bills or executions against the several owners of abutting real estate on the said street within the points named, and also to lend the use of the machinery of the city government to the party of the second part for the collection of the bills or executions so transferred to the party of the second part. This contract is to go into effect when signed by the mayor of the City of Atlanta on behalf of the party of the first part, and by said party of the second part by its president or other duly constituted authority, and upon the giving and acceptance of the bond provided for in this contract. In witness whereof said party of the first part has hereunto set its hand and seal by Porter King, mayor, and the party of the second part has likewise signed and sealed this instrument by B. F. Thomas, its president.

"The City of Atlanta, by Porter King, Mayor.

"Standard Paving Company, by B. F. Thomas, President."

Under this contract, the Standard Paving Company began work about the first of July, 1895, and turned over the street to the agents of the city in a finished condition about the last of August, 1895. On February 20, 1895, Floyd filed a written protest with the city council against the paving of Butler street, and said protest was brought to their notice and acted on by them adversely before the work was begun or the contract with the Standard Paving Company entered into. On or about September 5, 1895, a demand was made upon Floyd by the tax-collector of the city, that he pay his proportion of the said assessment, one hundred and seventy-six dollars and forty-four cents; whereupon Floyd paid one fourth of that amount in cash, and signed three written instruments, a copy of one of which is set out below; the transaction having taken place before the question of the liability of abutting property owners for the assessment had been submitted to the courts. The three writings were similar in all respects, except that the date of maturity was different, that of the first being September 5, 1896, of the second, September 5, 1897, of the third, September 5, 1898; the first of which is as follows: "B. R. No.    Note No.    Atlanta, Ga., Sept. 5, 1895. Whereas, by an act of

the legislature approved August 21st, 1891, power was granted to the City of Atlanta to transfer bills and executions against abutting owners for curbing and street-paving, which said act grants to the person so liable for such assessment the privilege of paying 25 per cent. thereof in cash, and 25 per cent. per annum each year for three years thereafter, with interest at the rate of seven per cent. per annum, and provides that if default should be made in a deferred payment, then all the unpaid assessment should become due and payable; and whereas an ordinance approved October 10th, 1891, was passed by said city to carry out said act, and whereas vitrified brick street-pavement has been laid by Standard Paving Company in said city on Butler Street, for which I am liable as an abutting land owner to the amount of $176.44 dollars, according to the assessment made by the city, the said assessment having been duly made and the amount ascertained, fixed, and distributed, after notice by the mayor and council of Atlanta, and the bill or execution therefor has been transferred to Standard Paving Company: now I do elect to pay 25% of said assessment cash, and have the balance postponed according to the provisions of said act, and I agree with Standard Paving Company to waive the right for full time aforesaid, and to pay at      Bank $44.11 Sept. 5, 1896, with interest at the rate of seven per cent. per annum until paid, payable semi-annually; and if I should make default in any of said payments, then all of the unpaid assessment shall become due and payable. This election and agreement are made subject to all provisions of said act and ordinance, and nothing herein contained shall be so construed as to impair or affect in any manner anything in said act or ordinance contained, as to the lien in favor of the city against abutting land and the owner thereof, the mode of enforcing said lien, collecting assessments, or any other particular.

[Signed]   B. F. Floyd.   (Seal.)"

These written instruments were delivered to the tax-collector and were transferred to the Standard Paving Company. Shortly after, they were endorsed and transferred to a partnership company of W. H. and S. H. Venable, entitled Venable Brothers, the following indorsement being written on the back: "Pay

to the order of Venable Bros., without recourse.    Standard Paving Company, J. E. M. Haskell, Sec'y and Treas." Two of these obligations were transferred to the Atlanta Banking Company, the following indorsement being made on the back: "Venable Bros." When the first of the obligations matured, Floyd refused to make any payment on it, and subsequently on the others. In December, 1897, the Atlanta Banking Company had an execution issued by the city clerk on the contract, as provided by law, against Floyd, which was levied and the property advertised for sale; then an application was made for a permanent injunction and cancellation of the writings in question. A temporary restraining order was granted by Judge J. H. Lumpkin, and extended until the final hearing. Upon that hearing, the Atlanta Banking Company amended its answer, and prayed for cross-relief in the form of a judgment against Floyd on the contract it held. This was granted, and a verdict against Floyd was directed in its favor, and injunction and other relief were denied. It was admitted that the question of the legality of the assessment against the property-holders for paving Butler street had been decided, July 27, 1896, by the Supreme Court of Georgia and the assessments declared to have been null and void ab initio, and, as distinctly set out in the bill of exceptions, the sole question on which the present case turns is, whether, although the assessment was invalid, Floyd was liable on these written instruments in the hands of the Atlanta Banking Company.

If the question as to whether the plaintiff in error was liable to pay the assessments made on him for the paving of North Butler street was involved, it would, under the authority of *City of Atlanta* v. *Smith*, 99 *Ga.* 462, be readily answered in the negative. Nor could it be held under the facts of this case that the defendant in error was such a bona fide purchaser of the obligations of Floyd as would exclude the defenses which existed between the maker of the instruments and the City of Atlanta at the time of their execution. The form of the instruments does not give them the character of negotiability by delivery or indorsement, and their nature necessarily puts upon the holders of them notice of the consideration for which they were given,

as well as the law regulating the same. But, notwithstanding these facts, the plaintiff in error was not entitled to any of the relief which he sought, nor can we extract from the record any legal reason why he should not pay these obligations. As a matter of law he was not liable to pay the assessment, but although he protested against the paving of the street and the same was done over his protest, yet when a demand was made upon him to pay his proportion of the assessment for the paving, he at once complied with the demand and elected to exercise the privilege given him by the act of the legislature, and paid one fourth of the amount assessed against him in cash and gave his written obligations to pay the remainder within the three following years. It is true that these agreements were made before it had been determined that such assessments were illegal, but nevertheless, in consideration of the increased value of his property caused by the paving, for which the assessments were made, he could make a valid and binding contract to pay his proportion of the cost of the same. It is argued by counsel for the plaintiff in error that, the assessment being illegal, the plaintiff in error was under no obligation to pay. This would be true if he were resisting the assessment, but in this case he is the moving party and seeks to have the obligations, freely and fairly entered into by him, cancelled, because he was not legally liable to pay such assessments. Before these obligations can be set aside, he must go further and show that in the execution of the obligations he acted under such a mistake of law or fact as would authorize him to call upon a court of equity to set them aside. So far as the record shows, he acted under no mistake either of law or fact. Neither his petition nor any part of it is found in the record, and, under the exceptions taken, there is no suggestion of mistake. For aught we know, he may have been perfectly cognizant of his legal rights in the premises and equally as well informed that the City of Atlanta had not made such a compliance with the law as entitled it to make a valid assessment against the owners of property on North Butler street for their proportionate part of the cost of paving.

As a general rule, a promise to pay upon a supposed liability

and in ignorance of the law binds the party.   See authorities cited in 1 Story's Eq. Jur., note on page 111.   And "a mistake as to a matter of fact, to warrant relief in equity, must be material, and the fact must be such that it animated and controlled the conduct of the party.  .  .   The court must be satisfied that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved."   93 U. S. p. 60.   In 1 Story on Contracts (5th ed.), § 528, it is said that, to render a contract voidable because of a mistake of fact, it is essential that the contract be made "under an injurious mistake or ignorance of a material fact"; and, in order for equity to interfere with a contract because of a mistake, Mr. Bishop, in his Law of Contracts, § 711, declares that "the mistake must be material, and such that, but for it, the complaining party would not have assumed the obligation."   As before stated, if he were seeking to resist the collection of the assessments, the law is plain that the plaintiff in error could not be made liable; but when he undertakes to set aside contracts voluntarily entered into by him, he must not only allege but prove that it was the result either of such a mistake of law or fact as authorizes the interposition of a court of equity.   So far as the record shows, the plaintiff in error rests his case on the ground that he was not legally liable for the assessments, and he draws the deduction that, not being so liable, he can not be held to the observance of his promises to pay.   This is not tenable.   It was perfectly competent for him to waive the illegality in the proceedings taken to have the work done, and if, with a knowledge of the irregularity of such proceedings he nevertheless, in consideration of the benefit to his property, undertook and agreed to pay his proportionate part of the expense of the same, such agreement will be held to be a valid and binding contract.   Inasmuch, therefore, as it has been clearly shown that he voluntary entered into these contracts, an absence of liability to pay the alleged debt for which they were given, without more, will not avail, and it must be held that he is not entitled to have the same abrogated or set aside.   The judgment of the court below, in refusing to grant the injunction and in rendering judgment against him under the cross-bill filed, is                 *Affirmed.   All the Justices concurring.*