## BEARD *v.* WHITE.

1. While, under the Civil Code, § 4995, special pleading is not admitted, yet where, by way of set-off or cross-bill, the defendant makes an affirmative claim against the plaintiff, the court may require the plaintiff to meet such allegations by appropriate pleading.

2. Where the defendant makes no motion therefor, he can not, after the case has been submitted to the jury, take advantage of the plaintiff's failure

to reply; nor is the plaintiff's silence to be treated as an admission of the allegations in the cross-bill.

3. An executory agreement to convey property, pay money, or perform services will not be enforced by the courts if the contract is based on an immoral consideration.

4. So too, where the consideration is immoral but the contract has been fully executed, the courts, applying the same principle, will leave the wrong-doers where they have placed themselves.

5. In Georgia there is no necessity for livery of seisin. The contract is executed and the title passes upon the delivery of the deed.

6. The grantor and his privies in estate are concluded by the execution and delivery of a deed to real estate, though the consideration be illegal or immoral, and regardless of whether there is contemporary or subsequent change of possession.

Submitted July 16, — Decided August 12, 1904.

Equitable petition.    Before Judge Holden.    Richmond superior court.    December 3, 1903.

Sallie A. White brought an equitable petition for the recovery of a city lot, alleging, that she was the owner of the property, and that the defendant was insolvent, and was allowing the property to remain exposed to danger of fire without insurance, and allowing it to deteriorate in value for the want of care and repairs; and therefore prayed a writ of possession and the appointment of a receiver.    She relied on a deed, dated August 2, 1901, whereby, in consideration of $500 in hand paid, the receipt of which was acknowledged, Henry Beard conveyed the property to her.    It was admitted that Henry Beard was the common grantor, and that the defendant was his sole heir.    The defendant, by her answer, claimed that there were no debts, and prayed, " that the conveyance having been made upon a consideration of five hundred dollars and no part having been paid, that the land be sold," and that the purchase-money be paid from the proceeds, and the balance be turned over to the grantee.    By amendment the answer alleged that the consideration of the deed was immoral, " to wit, the consent of the plaintiff to live in adultery with the grantor."    On the trial the plaintiff introduced the deed, and closed; whereupon the defendant moved for a verdict in her favor, because the plaintiff had failed to answer the allegations in the defendant's cross-bill.    This motion was overruled.    The plaintiff was recalled and testified, that Henry Beard was unable to walk or to do anything for himself, and that he offered to give

her the house for her services in attending to him until he got well or died; that he continued in that condition until his death; that she furnished him with his food and paid some of his doctor's bills; that he begged her to take him, said he had no money; but his lot was worth about five hundred dollars, and he would give that to her to take care of him. Another witness testified that he was present when the deed was signed, and heard Beard tell his attorney that "he wanted to make the property over to Sallie White to pay her to take care of him until he should die or as long as he should live." The defendant testified, that she was the widow of Henry Beard; that the plaintiff induced him to leave her and go to the plaintiff; that the reason he left her house and went to Sallie White's was that she objected to Sallie White's coming to her home and living with her husband there; that the plaintiff and Henry Beard were living together in adultery; that she (defendant) was his sole heir at law, and he left no debts; and "that she did not know of her own knowledge that Henry and Sallie had lived in adultery, or whether or not she had paid for the place." The court directed a verdict for the plaintiff. There was no motion for a new trial, but, by direct bill of exceptions, it was alleged, that the court erred in not requiring the plaintiff to answer the defendant's cross-bill praying affirmative relief; that the court erred in allowing the plaintiff to be offered as a witness "to establish an agreement between the plaintiff and the intestate," the defendant objecting on the ground that she was incompetent as a witness against the defendant, who, as the sole heir at law of a decedent who left no debts, was to be treated as his personal representative; and that the court erred in directing a verdict for the plaintiff, under the pleading and evidence submitted.

*F. W. Capers*, for plaintiff in error.

*B. B. McCowen* and *T. S. Lyons*, contra.

LAMAR, J. (After stating the foregoing fact.) 1, 2. Under the practice obtaining in this State, special pleadings and replications are not ordinarily allowed. There is an exception in those cases where the defendant, by set-off or cross-bill, seeks affirmative relief against the plaintiff. In order that the record may show what is the issue and make the judgment available on

a plea of res adjudicata, the court may in such cases require the plaintiff to meet these claims by appropriate written pleadings. But where the defendant makes no motion on the subject, he can not, after the case has been submitted to the jury, take advantage of the plaintiff's failure to file such responsive pleadings; nor will the plaintiff's silence be treated as an admission of the truth of the allegations in the defendant's cross-bill, plea of set-off, or like answer. Civil Code, §§ 5050, 4840, 4995, 5067, 5063. This rule is particularly applicable where, as in the present case, the affirmative matter is set up by way of amendment to the defendant's answer. *Hudson* v. *Hudson*, 119 *Ga.* 637 (3, 4).

3–6. The parties claimed under a common grantor. The defendant was his heir at law and in possession. The plaintiff was his grantee, and made out a prima facie case when she introduced in evidence the deed whereby he conveyed to her the premises in dispute. Even if under the Civil Code, § 5272, the defendant was a competent witness to the fact, or her evidence was sufficient to show that there had been adultery between the grantor and the grantee, the result would not have been different. For while illegal executory contracts are void, it is equally true that contracts based on considerations immoral will not be disturbed where they have been fully or voluntarily executed. The parties being in pari delicto, the courts will not disturb the rights of either at the instance of the other. If, for an adulterous consideration, Beard had contracted to pay White money or convey land, the courts would decline to enforce such contract, because of the mutual turpitude of the parties. But if he actually paid the money or actually delivered the deed, divesting himself of title and vesting it in her, the courts will remain equally passive. The parties will be left where they have placed themselves. The courts will no more set aside the executed agreement that they will enforce an executory contract. It is a necessary corollary of this principle that the heir can not recover if the interstate was bound by the deed. The wife was in privity with her husband. She succeeded only to what he left. If he had no title, neither did she inherit any by his death.

In Georgia there is no livery of seisin. Possession is not necessary to the acquisition of title to land. Title goes out of the grantor and into the grantee at the moment of the delivery

of the deed.    The contract is thereby fully executed; and had
Beard himself been the defendant in this action of ejectment,
he would have been estopped by his own act in signing, sealing,
and delivering a deed reciting a valuable consideration, and
expressly putting title out of himself into another.    In many of
the cases involving a similar question, there had in fact been
an actual change of possession.    In some it seems to have been
held that such a change was necessary in order to make the con-
tract executed.    But this question is concluded for us by authori-
ties directly in point.    Overruling the decision by two judges in
*Harrison* v. *Hatcher*, 44 *Ga.* 638 (2), it was held, in *Parrott* v.
*Baker*, 82 *Ga.* 373, that " both upon principle and authority, the
fraudulent maker of such instruments is bound by them accord-
ing to their terms, irrespective both of any actual payment of
a consideration, or any contemporary or subsequent change of
possession.  .  . The title passes as completely, so far as the par-
ties to the conveyance are concerned, where the possession is
retained as where it is delivered.  .  . It is a mistake — a wide
mistake — to regard an action of ejectment or complaint for land
as a call upon the court to enforce the fraudulent deed as a con-
tract.    The law, taking the parties at their word and acting upon
the deed as pure, has already executed it as a contract and trans-
muted it into title.    The court is called upon to do nothing in
behalf of the plaintiff to recover the land, but that which it does
for every plaintiff who comes armed with complete title to recover
possession of his property."    *Parrott* v. *Baker*, 82 *Ga.* 373, 374.
A deed to defraud creditors, or based upon an immoral considera-
tion, may be void as against creditors, or when used as a basis
for evicting persons not in privity with the grantor, but, accord-
ing to the express ruling in *Watkins* v. *Nugen*, 118 *Ga.* 375 (6),
" the courts will not set aside such a conveyance after it is exe-
cuted, at the instance of the grantor or any one in privity with
him."    If they will not do this directly, by cancellation or rescis-
sion, neither will they do so indirectly by refusing to give
the deed its proper effect when offered as evidence of a right
to recover in an action of ejectment.    The case may be a hard
one for the widow.    But she stands in no better position than
her husband, who had conveyed the land and divested himself
of any interest therein.    There was nothing left which could

descend. In view of this fact, the plaintiff was bound to recover. If she was an incompetent witness, the facts testified to by her were proved by a subscribing witness. If the immoral consideration be treated as out of the case, there was nothing to contradict the testimony that the consideration, valued at five hundred dollars, had been paid in care, nursing, board, and medical expenses. The verdict was demanded.

<em>Judgment affirmed. All the Justices concur.</em>