MAYOR &c. OF FORT VALLEY *et al. v.* LEVIN.

No. 11510.   FEBRUARY 12, 1937.

*Louis L. Brown Jr., Norman E. English, J. M. Hancock,* and *C. L. Shepard,* for plaintiffs in error.

*George B. Culpepper Jr.,* contra.

BELL, Justice.   On March 12, 1934, Mrs. Joseph Levin filed a suit in equity against the Mayor and Council of the City of Fort Valley; M. C. Mosley, as ordinary of Peach County; Mary H. DuPree, clerk of the court of ordinary; and W. L. Houser, George H. Wheaton, Mrs. Sallie B. Arnold, and Mrs. J. W. Campbell. Separate demurrers based on general and special grounds were filed by the Mayor and Council of Fort Valley, Peach County, W. L. Houser, and George H. Wheaton. After several amendments to the petition and renewal of the demurrers, the court overruled the general grounds of each demurrer, and to this judgment the demurrants excepted. Some of the special grounds of demurrer were overruled, and some were sustained. Still others were left open for future determination. Those which the court overruled raised the question of misjoinder of parties defendant.

The petition as amended alleged the following:   On January 1,

1928, Mrs. Campbell owned four separate parcels of real estate in the City of Fort Valley, Peach County, Georgia, encumbered respectively by deeds to secure debt, as follows: (1) lot on Bell Avenue, value $250, encumbered by a security deed to Mrs. Sallie B. Arnold, and now owned by Mrs. Arnold; (2) lot on Persons Street, value $600, encumbered by a security deed to the Citizens Bank of Fort Valley, and now owned by George H. Wheaton; (3) lot on Macon Street, value not stated, encumbered by a security deed to W. L. Houser, and now owned by Houser; (4) lot on Knoxville Street, value $3500, encumbered by a security deed to the present plaintiff, Mrs. Joseph Levin, and now owned by Mrs. Levin. Each tract was more fully described in the petition. While the petition does not so allege except as to Mrs. Levin, it is assumed in the briefs that each of the present owners acquired title through foreclosure of the security deeds. On December 20, 1928, an execution was issued by the clerk of the City of Fort Valley against Mrs. J. W. Campbell for taxes due to the city for the year 1928 in the principal sum of $153.30. On April 4, 1929, the city marshal made the following entry of levy thereon: "Georgia, Peach County. By virtue of the within fi. fa. I have this day levied on lot on Knoxville Street. This 4th day of April, 1929. W. E. Murray, City Marshal." In pursuance of this levy the city marshal, on May 7, 1929, after advertisement, did sell at public outcry to the highest bidder the following described property, being the property conveyed by the security deed to Mrs. Levin: "A certain lot on Knoxville Street fronting east 70 feet on Knoxville Street, and running back 165 feet, bounded on the north by Bell Avenue, east by Knoxville Street, south by land owned by Mrs. Irene Bull, west by lands of Mrs. J. W. Campbell." At this sale the City of Fort Valley was the highest bidder, and purchased the property for the sum of $173.25, as evidenced by a deed executed by the city marshal on the same day, and thereafter duly recorded in the office of the clerk of the superior court of Peach County. On December 20, 1928, T. E. Tharpe, tax-collector of Peach County, issued a tax fi. fa. against Mrs. Campbell for the principal sum of $341.80 for state and county taxes due by Mrs. Campbell for the year 1928. On July 22, 1929, the fi. fa. was levied by the sheriff of Peach County upon the Knoxville Street property, by an entry which described the same fully by metes

and bounds. At a sale made under this levy on September 4, 1929, M. C. Mosley, as ordinary of Peach County, became the purchaser, for the sum of $381.06, as shown by a sheriff's deed duly executed and recorded. At the time of these levies and sales Mrs. Levin still held the lien of her security deed on the property affected, the value of which, being $3500, was far in excess of the taxes due by Mrs. Campbell for the year 1928 either to the City of Fort Valley or to Peach County. At the time of these levies and sales Mrs. Campbell owned other property of less value, and either the lot on Bell Avenue or the one on Persons Street, each being vacant, would have been sufficient to pay the taxes due to both the city and the county. The levies made were excessive; each levying officer should have levied on the vacant property before proceeding to levy on the valuable Knoxville Street property, on which the plaintiff held a security deed. On May 19, 1931, the plaintiff sold this property and became the purchaser under a power of sale contained in her security deed, as shown by a deed executed in pursuance of such sale and duly recorded. The title to this property is now in the plaintiff, it being the same property levied on respectively by the marshal and the sheriff, as stated above.

On May 26, 1931, M. C. Mosley as ordinary of Peach County, and Mary H. DuPree as commissioner of deeds for Peach County, executed to the plaintiff a quitclaim deed for a consideration of $417.01 paid. This deed was duly recorded in the clerk's office. On May 26, 1931, the Mayor and Council of the City of Fort Valley executed to the plaintiff a quitclaim deed to the same property for a consideration of $221.52. This deed was duly recorded. The levy made by the marshal being void because excessive, all subsequent proceedings, including the deed to the plaintiff by the mayor and council, were also void, and the consideration paid by the plaintiff for such quitclaim deed has failed. For the same reason the consideration paid by the plaintiff to the County of Peach for the quitclaim deed executed in its behalf has failed. The quitclaim deed as made by the mayor and council is void and the consideration has failed, for the additional reason that the entry of levy as made by the city marshal was too general and indefinite to constitute a valid levy. Also, "the deed from Peach County to petitioner is void for the reason that same is executed

by the ordinary of Peach County, and conveys his interest in said property, and same, is void on its face." Since the deed from the city marshal to the mayor and council in pursuance of the purported tax sale was void for the reasons stated, the "said municipal authorities had never legally sold said property for taxes, did not own said property at the time it was conveyed to petitioner, and the taxes on the property of Mrs. J. W. Campbell due the City of Fort Valley for the year 1928 had not been paid until this plaintiff paid the sum of $221.52 on May 26th, 1931." For similar reasons, the state and county taxes due by Mrs. Campbell for the year 1928 were never paid "until this petitioner paid the sum of $417.01 on May 26, 1931." At the time of these payments and the execution of the quitclaim deeds by the city and county as stated above, the mayor and council "turned over" to the plaintiff the tax execution against Mrs. Campbell for the city taxes, and the ordinary "turned over to her" the tax fi. fa. issued by the county against Mrs. Campbell. "Peach County and the City of Fort Valley already hold enough money of petitioner, by reason of the aforesaid payments by petitioner to Peach County and the City of Fort Valley respectively, to pay the taxes for the year 1928 on the property upon which this petitioner held lien." The plaintiff "got no title whatever under the deeds from the Mayor and City Council of the City of Fort Valley to her, and from M. C. Mosley, ordinary of Peach County, to her, and the only thing she got of value was the tax executions for the year 1928 in favor of the City of Fort Valley and T. E. Tharpe, tax-collector of Peach County, against the said Mrs. J. W. Campbell. Petitioner shows that while said tax executions were not actually transferred, they were delivered to her and in her possession." The tax executions in question constituted first liens upon each of the four parcels of land owned by Mrs. Campbell on January 1, 1928, and in equity and good conscience the property on which the plaintiff held a lien, and of which she is now the owner, should not have been and should not be subjected to the payment of all of such taxes, but the other properties then owned by Mrs. Campbell "should have been and should be required to bear their pro rata part of said taxes."

The plaintiff "brings this her petition" for the purpose of setting aside the levy and sale as made under each execution, and

for the purpose of recovering from the city and the county the sums paid to them respectively by the plaintiff at the time of acquiring the quitclaim deeds from them. She prays that each of these levies, sales, and deeds be set aside and canceled as clouds on her title, and alleges that in such event "all of the property owned by the said Mrs. J. W. Campbell through the year 1928 could be made to bear its proportionate part of the tax for that year." Houser, Wheaton, and Mrs. Arnold are necessary parties to this action, for the reason that if the levies and sales are declared void it will be necessary that property now owned by these defendants, but then owned by Mrs. Campbell, "be subjected pro rata to the payment of said taxes; and petitioner avers that by bringing all of said defendants into court in one action it will avoid a multiplicity of suits and a circuity of action." " Petitioner is ready and willing to pay the pro rata part of taxes due on the property of Mrs. J. W. Campbell upon which in 1928 she held lien and which she now owns in fee simple." Neither the plaintiff nor Mrs. Campbell nor any one acting for them pointed out the Knoxville Street property for levy, and at the time of each levy the plaintiff was absent from the county and knew nothing about the levy or the sale until the year 1931, after the foreclosure of her security deed and her acquisition of the title thereunder. "The payments made by her to the ordinary of Peach County and the City of Fort Valley were made under duress and constraint and for the purpose of releasing the property to which she held title from detention." She prays for cancellation of all the proceedings and deeds relating to the purported tax sales, together with the quitclaim deeds executed to her by the City of Fort Valley and the County of Peach, but not including the tax executions; that she have and recover of the city and the county the amounts paid to them respectively, with interest, less whatever sums may be due on the Knoxville Street property for the year 1928; that a decree be so molded as to require payment, by the present owners of the other property belonging to Mrs. Campbell during the year 1928, of relative portions of the taxes due for that year; that petitioner be allowed to surrender to the City of Fort Valley and the ordinary of Peach County the quitclaim deeds executed by them to her, with proper order for cancellation of record, or in lieu thereof that she have the executions properly trans-

ferred to her with the right to control the same; that the title to the tax executions be decreed in her, with the right to collect from the individual defendants proportional amounts to be determined by the valuation of the various parcels of the land as shown by the tax digest, including the right to have the executions levied on such property; that she have judgment against the individual defendants for stated amounts representing the part of the taxes which should have been paid on the parcels now owned by them; and for general relief.

■ The court erred in not sustaining the general demurrers and dismissing the petition. More than twelve months after the purported tax sales of the Knoxville Street property, on which the plaintiff held a security deed and of which she later became the owner, she negotiated for and obtained quitclaim deeds from the city and the county, which were the purchasers at the tax sales. While a purchaser at a tax sale may permit a redemption as a matter of grace after the lapse of twelve months (*Union Central Life Ins. Co.* v. *Bank of Tignall*, 182 *Ga.* 233, 185 S. E. 108), it is apparent from this record that the plaintiff did not attempt a redemption. This is true for the reason that the quitclaim deeds were made to the plaintiff, and not to the defendant in fi. fa. or tax debtor as provided by law in case of redemption. Code, § 92-8304. Even if the levy as made by the city marshal was void both for excess and for insufficient description, as contended, with the alleged result that the marshal's deed to the city was also void, these facts do not entitle the plaintiff to recover the amount which she paid as consideration for the quitclaim deed executed to her by the mayor and council. This statement applies with equal force to the transaction with the ordinary and commissioner of deeds of Peach County, so far as any defect in the levy is concerned. The fact that the sales under the tax executions may have been void, so that no title was acquired by the purchasers, did not prevent the city or the county from demanding payments by the plaintiff before taking *affirmative* action to clear the title by executing deeds to her. The tax deeds, whether valid or invalid, were in existence; and the plaintiff, being dissatisfied with the situation, agreed to pay and did pay stated amounts to the city and the county as consideration for quitclaim conveyances which they respectively executed to her as a matter of bargain and contract.

Whether or not the plaintiff might have had a cancellation of the tax deeds in a court of equity, she could not have compelled the execution of the quitclaims, and the transactions relating to them appear to have been entirely voluntary on every side. The allegations that the plaintiff made the payments "under duress and constraint and for the purpose of releasing the property to which she held title from detention" is a mere conclusion of the pleader, and is contrary to inferences which necessarily arise from the petition as a whole. There is no allegation that either the city or the county was in possession of the property or was in any wise detaining the same from the plaintiff. The petition does not show any payment made under duress or constraint, or for the purpose of releasing person or property from detention or to prevent a seizure thereof. Code, §§ 20-503, 20-1007; *Strachan Shipping Co.* v. *Savannah,* 168 *Ga.* 309(3) (147 S. E. 555); *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 819 (180 S. E. 847), and cit.

The facts are that the city and the county each had at least a colorable claim against the property, and that the plaintiff negotiated for and obtained a deed from each, for the purpose of removing it. In these circumstances the deeds were not without consideration, and there was no failure of consideration, even though neither the city nor the county had any title to the property. Each claim constituted within itself a subject-matter for the contract; and since neither deed contained a covenant of warranty, the mere want of title in the grantor would not authorize a recovery of the consideration paid. In *McDonald* v. *Beall,* 55 *Ga.* 288(10), it was held that "to entitle the plaintiff to treat the contract of sale of the property as rescinded as a foundation for the recovery of the purchase-money paid therefor, where there was no covenant of warranty, he must show such fraud on the part of the defendant in respect to the title as would authorize a rescission." In *McDonough* v. *Martin,* 88 *Ga.* 675 (16 S. E. 59, 18 L. R. A. 343), it was said: "Where the terms of a deed of conveyance, taking the whole together, show that the instrument is in its essence a quitclaim title, and that the makers intended no warranty except as against themselves and their own acts, a failure of the title to two of the lots out of a great number covered by the conveyance, by reason of the existence of a previous outstanding better title, will be no breach of any implied covenant arising out

of a recital of facts or out of the use of words of conveyance, no fraud or intentional misrepresentation being alleged. Nor will the failure of the vendees to get or to hold possession of such two lots, without any fraud or misconduct on the part of the vendors, constitute a defense to an action for the purchase-money or any part thereof." In *Floyd* v. *Atlanta Banking Co.*, 109 *Ga.* 778 (35 S. E. 172), it appeared that a property owner voluntarily entered into a contract with a municipal corporation, agreeing to pay a stated sum of money as his proportionate share of the cost of paving a street on which his property abutted. Afterwards he sought to annul the contract, on the ground that the assessment for such paving was neither legal nor authorized; but he failed to show that the contract was the result of fraud, accident, or mistake. It was ruled by this court that he was not entitled to the equitable relief sought. Nothing in the way of fraud, accident, or mistake was shown in the present case. Compare *Wright* v. *Shorter,* 56 *Ga.* 72 (4-6). One in possession of land and claiming it as his own may fortify his title or buy his peace of adverse claimants as often as they appear, if he cares to do so. *Harris* v. *McDonald,* 152 *Ga.* 18 (3) (108 S. E. 448). It necessarily follows that deeds obtained for this purpose are not without consideration, and that in the absence of warranty the purchaser is without cause for complaint, unless there is fraud, or other similar ground for equitable relief.

While the executions may have constituted first liens upon *all* the property of Mrs. Campbell, this included the Knoxville Street property, against which the plaintiff held a security deed and of which she now claims to be the owner in fee simple. She could not have forced the city or the county to levy upon any particular property in preference to that upon which she held a security deed, but it was lawful for the taxing authorities to proceed against any of the parcels which were subject to the liens. *Decatur County Building & Loan Asso.* v. *Thigpen,* 173 *Ga.* 363 (160 S. E. 387); *Real Estate Loan Co.* v. *Union City,* 177 *Ga.* 55 (169 S. E. 301). So, if the plaintiff had paid the full amount of the taxes, she would not have had any just ground of complaint against either the city or the county, because she would merely have removed a lien against her own property. Accordingly, if the payments could be treated as payments of the taxes, they were nevertheless volun-

tary and not recoverable. The plaintiff did not, at any time before acquiring the deeds from the city and the county, seek an apportionment of the taxes under the equitable principle laid down in *Brooks* v. *Matledge,* 100 *Ga.* 367 (28 S. E. 119), nor does it appear that she would have been entitled to this remedy, there being no allegation that Mrs. Campbell was insolvent. In any event, the plaintiff simply elected to purchase the outstanding claims, and this should be an end of the matter so far as the present record shows. The allegations that the tax executions were "turned over" to the plaintiff, and that the taxes were never paid until she paid the amounts stated in the deeds from the city and the county, do not show that the tax liens are still in existence. Without further allegations upon this point, it should be assumed that the executions were delivered to the purchasers at the tax sales along with the tax deeds, and were in turn delivered with such deeds to the plaintiff, as documents relating to title, at the time she acquired the quitclaim conveyances. Code, § 29-412. The petition as a whole, construed most strongly against the plaintiff, shows an intention by all the parties concerned to treat the executions as extinguished by the sales made thereunder, and discloses no reason for applying the doctrine of subrogation; nor does it state sufficient ground for the grant of other relief against any of the defendants, based upon alleged invalidity of the levies and of the tax deeds.

It is argued, however, that if the transactions did not amount to redemption, so as to afford to the plaintiff the remedy allowed by law to a creditor who effectuates redemption (Code, § 92-8302), it follows that neither the city nor the county had any right to sell the property unless it was advertised and sold "in accordance with the law providing for the sale of property owned by counties and municipalities." It appears that the affairs of Peach County are in the charge of the ordinary, as distinguished from county commissioners. The Code declares: "The ordinary or other authority shall have the control of all property belonging to the county, and may by order to be entered on his minutes direct the disposal of any real property which may lawfully be disposed of, and appoint a commission to make the titles thereto, and the conveyance by such commission in accordance with such order shall vest the grantee or vendee with the title of the county." § 91-602. This

statute does not require a public sale or advertisement, and the petition does not show any want of compliance therewith. With regard to municipal corporations, it is provided (Code, § 92-4404) that "where it is clearly shown to the governing body that property, either returned or unreturned, has been sold and purchased by the governing body to protect the taxes of the municipal corporation and the cost of collecting the same, and that said governing body has not parted with title to the same, such governing body shall, by unanimous vote, be authorized to quitclaim such property to the owner thereof at the time of purchase by the governing body, or his administrators, executors, heirs, or assigns, upon payment of all taxes which may be due and all costs due by reason of said sale." It is evident from the allegations that the plaintiff and the city both considered the marshal's sale valid; and if the parties *dealt with each other* upon this theory, the court should not, without good and sufficient reason, adopt a different theory in *dealing with the case*. It is therefore proper to apply the foregoing section. The plaintiff, who acquired the property by foreclosure of a security deed which she held "at the time of purchase by the governing body," would come within the term "assigns" as employed in this section. Nor does the petition show any want of compliance with this statute.

It is further contended for the plaintiff that the quitclaim deed from Peach County "is void, for the reason that same is executed by the ordinary . . and conveys his interest in said property," and not the county's interest. There is no merit in this contention, because the petition discloses on its face that the deed was executed not only by the ordinary but also by the commissioner of deeds, who, in the absence of allegation to the contrary, is presumed to have acted in accordance with a previous order of the ordinary authorizing such conveyance. Furthermore, if the plaintiff did not obtain a proper conveyance in pursuance of the agreement, the remedy would be an action for specific performance or reformation, and not recovery of the purchase-price. The petition did not state a cause of action against any of the defendants, and the general demurrers should have been sustained.

■ It follows from what has been said that the court erred also in overruling the grounds of special demurrer which made the con-

tentions respectively that Houser, Wheaton, and Mrs. Arnold were improperly joined as parties defendant.

*Judgment reversed. All the Justices concur.*