## CALLAN COURT COMPANY *v.* CITIZENS AND SOUTHERN NATIONAL BANK, trustee, *et al.*

88

Nos. 11503, 11504.   March 15, 1937.

90

92

98

104

106

108

122

*Spence & Spence* and *Hewlett & Dennis,* for plaintiff in error.
*Alston, Alston, Foster & Moise* and *H. J. Miller,* contra.

GRAHAM, J. The record is voluminous, consisting of 1160 pages, not including several hundred pages of typed and printed briefs of counsel for the parties. So the foregoing statement of the case necessarily omits much of the evidence, and does not set out all of the testimony of the witnesses quoted. However, that statement contains enough of the evidence and the record to understand and fairly consider the case. The Atlanta Biltmore Hotel Company and the Callan Court Company, the intervenor, was a one-man corporation, financed, controlled, and operated by William Candler. The intervenor owned the hotel company.

Candler owned the intervenor, and endorsed the bonds. He was president and financial manager of both companies; and he testified, in reference to the many transactions and manipulations in purchasing and transferring title to the bonds in the hotel company and cremating the bonds and apparently retiring them, that the entries on the books of the companies in reference thereto, indicating the purchase of the bonds from the Callan Court Company by the hotel company, were mere fiction, inter-office transactions without meaning. However, we shall deal with the hotel company and the intervenor in this opinion as separate and distinct entities.

1. A reversal should not be had on the refusal of the court to recommit the case to the auditor. The motion to recommit was overruled on March 5, 1936, by an order of the court as follows: "After hearing argument and consideration of the motion to recommit the case to the auditor, counsel for plaintiff having stated in open court that they duly relied on the numbered special findings of fact and conclusions of law contained in the auditor's report, and did not claim under any the other recitation or statement of fact an expression of the opinion by the auditor set forth in the report. The motion is denied." It seems from the wording of the order that the court was of the opinion that under the admissions of counsel for the plaintiff it was unnecessary to recommit the case. On May 18, 1936, the court, apparently overlooking the order of March 5, 1936, entered another order overruling the motion to recommit the case. The plaintiff, in the bill of exceptions of June 6, 1936, excepted to the order of May 18, 1936, overruling the motion to recommit the case. No exceptions pendente lite to the order of March 5, 1936, were filed. The time for excepting to the first order could not be extended by the entry of the second order. No exceptions pendente lite having been taken to the first order, an exception in the bill of exceptions tendered more than thirty days after the entry of the order of March 5, 1936, comes too late for consideration. *Brandon* v. *Akers,* 134 *Ga.* 78 (67 S. E. 540). Nevertheless it does not appear that any error was committed by the court in overruling the motion to recommit. The finding of the auditor, approved by the judge, appears to be correct under the evidence and pleadings. A proper result was reached. And the error, if any, in the refusal to re-

commit the case was harmless. Code, § 10-305; *Norton* v. *Brown,* 173 *Ga.* 146 (159 S. E. 702); *Simmons Hardware Co.* v. *Timmons,* 180 *Ga.* 531 (179 S. E. 726).

2. The plaintiff in error contends that the failure of the plaintiff to demur to the intervention admitted its allegations as laid, and that it was entitled to prevail, and insists that the evidence sustained its allegations. Such contention is not well taken. An intervenor takes the case as he finds it. *Seaboard Air-Line Ry. Co.* v. *Knickerbocker Trust Co.,* 125 *Ga.* 463 (54 S. E. 138); *Charleston & Western Carolina Ry. Co.* v. *Pope,* 122 *Ga.* 577 (50 S. E. 374). The intervenor stands as to the plaintiff somewhat in the position of a defendant with a cross-action. Ordinarily the plaintiff is not required to reply to the answer. Code, § 81-311. If new matter be set up, not controverting the petition, the plaintiff, in proper cases, may be required by the court to answer same by appropriate written pleading. § 81-309. When no order of court is had, requiring further pleading, the plaintiff does not have to reply in writing to the defendant's answer. *Willis* v. *Sutton,* 116 *Ga.* 283 (42 S. E. 526); *Smith* v. *Hodges,* 8 *Ga. App.* 785 (70 S. E. 195). The plaintiff is not required to demur to the answer. In *Winkler* v. *Scudder,* 1 *Ga.* 108, cited by intervenor, it seems to have been held that it was the duty of the plaintiff to contest the validity of the defense by demurrer. That decision was before the pleading act of 1887, from which section 81-309 was codified, and which section provides that "Pleas and answers may be demurred to." Under this section the plaintiff may, but is not required to, demur to the answer. A failure to demur does not admit that the defense alleged is valid. *Crew* v. *Hutcheson,* 115 *Ga.* 511 (42 S. E. 16); *Walden* v. *Walden,* 124 *Ga.* 145 (52 S. E. 323); *Williams Mfg. Co.* v. *Warner Sugar Refining Co.,* 125 *Ga.* 408 (54 S. E. 95); *Central of Ga. Ry. Co.* v. *Tankersley,* 133 *Ga.* 153 (65 S. E. 367). Nor does a failure to demur confess the action either in law or in fact. Mere proof of a fact as laid will not authorize recovery, unless the case as laid so authorizes. *Kelly* v. *Strouse,* 116 *Ga.* 872 (43 S. E. 280). "Under the practice obtaining in this State, special pleadings and replications are not ordinarily allowed. There is an exception in those cases where the defendant, by set-off or cross-bill, seeks affirmative relief against the plaintiff. In order that the record

may show what is the issue and make the judgment available on a plea of res adjudicata, the court may in such cases require the plaintiff to meet these claims by appropriate written pleadings. But where the defendant makes no motion on the subject, he can not, after the case has been submitted to the jury, take advantage of the plaintiff's failure to file such responsive pleadings; nor will the plaintiff's silence be treated as an admission of the truth of the allegations in the defendant's cross-bill, plea of set-off, or like answer." *Beard* v. *White,* 120 *Ga.* 1018, 1020 (48 S. E. 400). A failure to demur would not admit more than the demurrer admits. The demurrer admits to be true only properly pleaded allegations. It does not admit opinions or conclusions of the pleader. Code, § 81-304; *Southern Ry. Co.* v. *Covenia,* 100 *Ga.* 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. R. 312); *Brown* v. *Massachusetts Mills,* 7 *Ga. App.* 642 (67 S. E. 832). The plaintiff was not required to either demur to or answer the intervention. Nevertheless it answered the intervention, and denied the right to the relief prayed. The case was tried on the contention raised by the intervention and the answer. An inspection of the intervention will disclose that the allegations relied on by the intervenor were mostly conclusions of the pleader, without corresponding sustaining allegations of fact. Such conclusions and the denial thereof raised no issue. *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429). It was not error to find against the intervention on the ground that the plaintiff failed to demur to the intervention, although the intervenor may have proved the allegations in the intervention as laid.

3. The foregoing deals with assignments of error concerning the pleadings and rulings which do not go directly to the merits of the case. We shall now consider the questions which do go directly to the merits, and which counsel for plaintiff in error state in their brief to be the main questions. Did the Callan Court Company burn the $1,766,800 of the bonds of the hotel company by mistake; and should this company have been granted its prayer for relief? Is Callan Court Company entitled to a lien for $578,-114.39 advanced for taxes, interest, and insurance, superior to the lien of the outstanding bonds? As to the mistake, the plaintiff in error contends that when the bonds were burned the Callan Court Company was the true owner of them, and that they were

burned without any consideration to the company, without any injury to any other bondholder, without any intention to make a gift of or to retire the bonds, and without any intention to cancel them or to satisfy the debt they represented; that the Callan Court Company was acting through William Candler, its president, who owned practically all of its capital stock, and it owned practically all the capital stock of the hotel company; that it conceived the idea of purchasing all of the outstanding bonds of the hotel company, and thought at the time and when the bonds were burned that it had ample funds to purchase them; that the bonds were burned to avoid payment into the sinking-fund held by the trustee, for interest and principal on the bonds; that Candler believed he would be able to acquire all the outstanding bonds, that the burning of those already acquired would not affect the company, that the value of same would survive in the assets of the hotel company, and that the burning of the bonds was of no consequence to and would not in any manner injure the Callan Court Company, and that the rights of Callan Court Company would not be jeopardized by the act of burning the bonds before all the bonds were bought; that by accident and surprise he was prevented from purchasing all the outstanding bonds, the accident and surprise resulting from a sudden collapse of the securities market and the loss of value in the securities Candler had segregated into a fund with which to purchase the bonds, and also on the refusal of the bank to lend money on his collateral, as it had agreed; that such burning of the bonds was the result of a mistake; that Candler believed it was inconsequential if he cremated all of the bonds before he bought all of them, because when the other bonds were bought and cremated the value of the entire sum paid for the bonds would then vest in him by merging into the stock of the hotel company: that he came to the conclusion that he could buy all the remaining bonds, and that to cremate some before buying all could not result in loss, because when they were cremated the value of the entire sum would vest in him by merger; that he believed, when cremating the bonds and advancing the moneys to the hotel company, that intervenor was fully protected under the provisions of the trust deed in its lien under the bonds and for the advancement of the money; and that intervenor did not intend thereby to release or lose its lien on the bonds or

for the debt represented by the bonds and the money so advanced.

The plaintiff in error insists the mistake consisted in the mental conclusion of Candler that the burning of the bonds before he acquired the remaining bonds would be of no consequence to Callan Court Company; that Candler was mistaken in his belief that the destruction of the bonds was of no consequence in carrying out the plan which had been devised to retire all the bonds, that the rights of Callan Court Company were not jeopardized by his act in burning these bonds before he had bought all the other bonds, that his act would be of no evil consequence to Callan Court Company, and that the incineration of the bonds would not result in the destruction of the value represented by them; that when he burned the bonds he had ability to buy all the remaining bonds; that he could buy all the remaining bonds, and to burn some of them before he bought all of them would not result in a loss, because the value of the entire sum would vest in him by merger of his title in the hotel property; that he had the right and ability to buy all these bonds, and since he was in the act of buiying all the remaining bonds for the plaintiff in error it was inconsequential for him to destroy them, and there was an advantageous reason for his doing so; that the value of the bonds would survive in Callan Court Company through its ownership of the title to the property; and that he acted under a misconception of the consequences of his acts, and under the assumption that he had all the bonds in hand, and that it was a wise thing to burn the bonds; that this belief was an erroneous conclusion on which he acted in burning the bonds; that it was a mistake in fact; that he was mistaken in such belief, and that if he had not been so mistaken he would not have burned the bonds; and that all this occurred before the surprise and accident of the collapse of the securities market rendered his mistake apparent. Admitting these contentions to be true, they are not sufficient to grant the relief prayed. "Mistake relievable in equity is some unintentional act, or omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence. This power shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mistake." Code, § 37-202. "Mere ignorance of the law on the part of the party himself, where the facts are all known, and there is no misplaced confidence, and no artifice or

deception or fraudulent practice is used by the other party either to induce the mistake of law or to prevent its correction, shall not authorize the intervention of equity." § 37-209. "Mistake, on the other hand, is internal; it is a mental condition, a conception, a conviction of the understanding—erroneous, indeed, but none the less a conviction,—which influences the will and leads to some outward physical manifestation. Its operation is ordinarily, though not always, affirmative,—the doing of some act which would not have been done in the absence of the particular conception or conviction which influenced the free action of the will. Its essential requisite is ignorance. It is distinguished from fraud, fraudulent representations, or fraudulent concealments, by the absence of knowledge and intention, which in legal fraud are actually present, and in constructive fraud are theoretically present, as necessary elements. It is also distinguished from that inattention or absence of thought which are inherent in negligence. The erroneous conception or conviction of the understanding which constitutes the equitable notion of mistake has nothing in common with negligence; equity will not relieve a person from his erroneous acts or omissions resulting from his own negligence. Mistake therefore, within the meaning of equity, and as the occasion of jurisdiction, is an erroneous mental condition, conception, or conviction, induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time." "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in,—1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or 2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed." 2 Pomeroy's Equity Jurisprudence, § 839. "It will be remembered that the essential element of a mistake was defined to be a mental condition or conception or conviction of the understanding. This mental condition may be either a passive state or an active conviction. When merely passive, it may consist of an unconsciousness, an ignorance, or a forgetfulness; when active, it must be a

belief. In the first of these two conditions, the unconsciousness, ignorance, or forgetfulness may be either of a fact which is present and now existing, or of a fact which is past and has existed; they must always concern a fact material to the transaction. In the second condition, the belief may be either that a certain matter or thing exists at the present time, which really does not exist; or that certain matter or thing existed at some time which did not really exist. All possible forms of mistake of fact are embraced within this description; and all particular errors which fall under any of these conditions are mistakes of fact which furnish an occasion for equitable relief." Id. § 854. "The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief." Id. § 843.

The only mistake suggested by the pleadings and the evidence, when the case is stripped to its actual facts, is that Candler was probably mistaken as to his ability to act in the future. There was no mistake as to any present or past fact. He, like many others, secure in his belief in his financial ability, was unable to foresee the disaster of the future. He could not foreknow the panic. Few could; yet it came. It broke up his plan. But the accident or surprise of the panic that rendered the mistake apparent, or the change in the economic conditions, furnished no ground for equitable relief. *Kontz* v. *Citizens & Southern National Bank,* 181 *Ga.* 70 (181 S. E. 764); *Bank of Alapaha* v. *Purvis,* 178 *Ga.* 284 (173 S. E. 103); *Poullain* v. *English,* 57 *Ga.* 492; Franklin Telegraph Co. *v.* Harrison, 145 U. S. 459 (12 Sup. Ct. 900, 36 L. ed. 776); Rutland Marble Co. *v.* Ripley, 10 Wall. 339 (19 L. ed. 955); Southern Ry. Co. *v.* Franklin & R. Co., 96 Va. 693 (32 S. E. 485, 44 L. R. A. 297); Schmidtz *v.* L. & N. R. Co., 101 Ky. 441 (41 S. W. 1015).

This case furnishes another instance wherein the hindsight is better than the foresight, for which law or equity affords no remedy. The law does not restore mere blindness or cure bad sight. The authorities are numerous that mistake of a past or present fact may warrant equitable relief, but a mistake in opinion or mental conclusion as to an uncertain future event is not ground for relief. The mistake relievable must be with refer-

ence to a material fact, past or present. *Floyd* v. *Atlanta Banking Co.,* 109 *Ga.* 778 (35 S. E. 172); *Abbott* v. *Dermott,* 34 *Ga.* 227; *Jenkins* v. *German Lutheran Church,* 58 *Ga.* 125; *Alexander* v. *Herring,* 54 *Ga.* 200; *Atlanta Trust & Banking Co.* v. *Nelms,* 116 *Ga.* 915, 923 (43 S. E. 380); *Dibble* v. *Currier,* 142 *Ga.* 855 (83 S. E. 949, Ann. Cas. 1916C, 1); *Colclough* v. *Bank of Penfield,* 160 *Ga.* 303 (127 S. E.. 752); Chicago & Northwestern Ry. Co. *v.* Wilcox, 116 Fed. 913; Parke *v.* Boston, 175 Mass. 464 (56 N. E. 718); Nelson *v.* Chicago & Northwestern Ry. Co., 111 Minn. 193 (126 N. W. 902, 20 Ann. Cas. 748); *Morris* v. *S. A.-L. Ry. Co.,* 23 *Ga. App.* 554 (99 S. E. 133). Moreover, the auditor was authorized to find from the evidence and the pleadings that Callan Court Company was fully cognizant of the trust deed, its terms, and the outstanding bonds; that it was fully informed as to the condition of the hotel company and of the facts that it was necessary to pay monthly into the sinking-fund to the trustee for the principal and interest on the bonds to prevent default, and that the hotel company was not making sufficient money to meet this obligation; that if it advanced money to the hotel company to pay the same, a large percentage would come back to it on the bonds it held, and that such would be subject to income tax, and that by retirement of its bonds it could stop such payment to the amount due on its bonds without default under the trust deed; that through a purported sale which it intended to make it placed the title to its bonds in the hotel company in order that they might be retired as liabilities of that company, and that for the purpose of retiring the bonds and to avoid these obligations on the part of that company they were actually burned and carried on the books of that company as having been retired and having ceased to be a liability of the hotel company; that all this was done intentionally on the part of Callan Court Company, without any mistake on its part or the mistake of its executive officer of any existing or past fact; and that it was the intention of Callan Court Company, and also that of the hotel company, known to Callan Court Company at the time of the cremation of the bonds, by such method to retire them.

It appears from the foregoing, which is controlling on the question, that the finding of the auditor against plaintiff in error with reference to the bonds was authorized under the evidence and pleadings.

4. A disapproval by the judge of exceptions to an auditor's report in an equity case, and refusal to submit such exceptions to a jury, where the finding of the auditor is warranted by the evidence, will not be disturbed. Code, § 10-402; *Bradley* v. *DeLoach,* 176 *Ga.* 142 (167 S. E. 301); *DeLaPerriere* v. *Williams,* 175 *Ga.* 339 (165 S. E. 214). In an equity case, where some of the findings of fact by an auditor are sufficient to support a decree and are not themselves subject to exceptions taken, a judgment founded thereon should not be set aside, notwithstanding other findings of fact and of law may have been subject to exception. *Robinson* v. *Reese,* 175 *Ga.* 574 (165 S. E. 744).

5. The auditor was also authorized to find that the intervenor was not entitled, under the provisions of the trust deed, after title to the bonds was placed in the hotel company and the bonds burned and retired, to have same decreed to be of equal dignity to the remaining bonds; and was authorized to find that the hotel company, after having obtained apparent title to the bonds and having so retired them, was without authority to reissue the cremated bonds on a parity and coequal in lien under the trust deed with the outstanding bonds. The reissuance of the bonds and the attempt of the hotel company to recognize ownership thereof in the intervenor gives it no better standing as against the outstanding bonds than it had before. Such transaction, if for no other reason, was prevented by the terms of the trust deed, which in section 3 of article IV stipulated: "The company covenants that it will not directly or indirectly extend or consent to the extension of the time for payment of any such bond or coupons, and that it will not directly or indirectly be a party to or approve any such arrangement thereafter by purchasing or funding any such bonds or coupons, or in any other manner. In case the time for payment of any such bond or coupon shall be so extended, whether or not such extension be by and with the consent of the company, such bond or coupon shall not be entitled, in case of default hereunder, to the benefit or security of this mortgage, except subject to the prior payment in full of the principal of all bonds secured hereby, then outstanding, and of all coupons on said bonds, time for the payment of which has not been so extended; the intention being to prevent any accumulation after maturity of bonds or coupons issued hereunder." The auditor was also authorized to find that

the intervenor was not entitled, either under the provisions of the trust deed or under the doctrine of subrogation, to have a lien superior to the lien of the outstanding bonds decreed in its favor for the sum of $198,249.46, or other sum, advanced by it to the hotel company to pay taxes, interest, and insurance. It is claimed the advances were made by the intervenor to the hotel company for the purposes alleged, namely, to enable the hotel company to comply with the provisions of the trust deed requiring monthly deposit into a sinking-fund to the trustee to meet interest and principal on maturing bonds, and to pay taxes and insurance due by the hotel company, so as to avoid default with resultant foreclosure of the trust deed; and, as hereinbefore stated, that the intervenor did not intend to make a gift of the bonds or funds so advanced to the hotel company or to any one, and did not intend to release or discharge the lien of its cremated bonds, but thought that it was fully protected under the terms of the trust deed. There is no contention that the intervenor was not authorized to transfer its bonds to the hotel company or to advance the various sums thereto for the payment of taxes, interest, and insurance, or that its acts in the premises were ultra vires. The manner in which the money was advanced amounted to nothing more than an extension of credit by the intervenor to the hotel company. No lien or transfer of the lien was taken by the intervenor for the funds. From time to time it deposited the necessary funds to the account of the hotel company, and the hotel company checked against the funds as it would in any ordinary transaction, to pay the items of taxes, interest, and insurance. These advancements to the hotel company were voluntary on the part of intervenor, and were not made in its own behalf, but were extended in the interest of and for the protection of the hotel company.

Our courts recognize the doctrine of subrogation and will grant relief to one who comes within the rule. "Subrogation is the substitution of another person in the place of the creditor, to whose rights he succeeds in relation to the debt. That change which puts another person in the place of the creditor and that which makes the right, the mortgage, or the security which the creditor has, to the person who is subrogated to him—that is to say, who enters into his right." "The principle which lies at the bottom of the doctrine is that the person seeking it must have paid

the debt under grave necessity to save himself a loss. The right is never accorded to a volunteer." Bouvier's Law Dictionary (Rawle's 3d Rev.), 3166-3167.

"The doctrine of subrogation has for a long time been applied by courts of equity. It was borrowed from the civil law, and was of two kinds: the legal subrogation, which took place as a matter of equity, without any agreement to that effect, made with a person paying the debt; and the 'conventional subrogation,' which was applied where an agreement was made with the person paying the debt that he would be subrogated to the rights and remedies of the original creditor." "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own." *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204). In that case the court defined and discussed subrogation more at length than in any other case coming to our attention, and held: "It is, however, never applied for the benefit of a mere volunteer." For other cases in point see *Investors Syndicate* v. *Thompson,* 172 *Ga.* 203 (158 S. E. 20); *Benenson* v. *Evans,* 162 *Ga.* 578 (134 S. E. 441); *Ragan* v. *Standard Scale Co.,* 128 *Ga.* 544 (58 S. E. 31); *Federal Land Bank* v. *Barron,* 173 *Ga.* 242 (160 S. E. 228); *Colonial Hill Co.* v. *Mortgage Bond & Trust Co.,* 174 *Ga.* 204 (162 S. E. 531); *Flower* v. Bricker, 178 Ark. 764 (12 S. W. (2d) 394); Pearmain v. Massachusetts Hospital Life Ins. Co., 206 Mass. 377 (92 N. E. 497).

The intervenor voluntarily transferred to the hotel company the bonds cremated and the funds in question. The entries on the books of the two companies indicated that the circumstances were for a consideration, and that there was a settlement with the intervenor by the hotel company for the bonds transferred and for the money advanced. The intervenor now insists that there was no consideration for the transfer; that it received nothing for the bonds and advancements; and that at the time it thought it would be protected under the trust deed, and that the value of the bonds would survive in the hotel property. But it can not escape the fact that it did transfer the title to the bonds to the hotel company and made advancements to that company without taking any

lien or transfer of lien; that such was to pay the debt of the hotel company, and not an obligation of intervenor; and that at the time of the foreclosure the title to the money and bonds was not in the intervenor. Its further contention that it believed that the value of the cremated bonds and the debts paid would survive to the intervenor in the hotel property does not alter the case. The value of the bonds and debts did merge into and survive in the hotel company property, for the reason that its liabilities were lessened to the extent of the amount due on the bonds, taxes, and insurance paid, thus increasing the value of its assets. There was no error in finding that intervenor was not entitled to subrogation.

It is unnecessary to consider the numerous other assignments of error. The rulings herein stated control and decide the case, irrespective of any other exception.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Russell, C. J., Beck, P. J., and Bell, Hutcheson, Graham, and Worrill, JJ., concur.*